MARSTILLER, J.
Geraud Moreland, II, is a client of the Agency for Persons with Disabilities (“Agency”). He has been diagnosed with mental retardation, epilepsy, obsessive compulsive disorder, deep sleep phase syndrome, and apraxia (loss of fine motor skills). He is eligible for the Medicaid Waiver program for developmentally dis *153 abled persons, and appeals an Agency final order assigning him to the Tier Three Waiver. Citing our decisions in Newsome v. Agency for Persons with Disabilities, 76 So.3d 972 (Fla. 1st DCA 2011), and Royer v. Agency for Persons with Disabilities, 88 So.3d 300 (Fla. 1st DCA 2012), Mr. More-land asserts that the Agency reversibly erred by making the tier assignment based only on his need for personal care assistance, when his Agency-approved cost plan includes other services. We agree, and remand to the Agency for further consideration.

Background

The Agency administers the State’s federally-approved Home and Community-Based Services Medicaid Waiver Program for individuals with developmental disabilities (“DD Waiver”). See 42 U.S.C. § 1396n(c); §§ 393.0661, 409.906(13), Fla. Stat. (2009). Section 393.0661(3), Florida Statutes (2009), creates a four-tiered structure for the DD Waiver based on the nature and extent of an individual’s disabilities and service needs. Each tier has an annual expenditure limit, and the statute directs the Agency to assign clients to one of the four tiers based on specified cost guidelines, reliable assessment instruments, and client characteristics. The Agency’s ability to serve DD Waiver clients is constrained by available appropriations. See § 393.0661, Fla. Stat. (2009).
In May 2010, the Agency notified Mr. Moreland it was assigning him to Tier Three. The reason given for the assignment was: “You live in your family home and are authorized to receive Personal Care Assistance at the moderate level.” At the time, Tier One had no expenditure limit, while the limit for Tier Three was $35,000. See §§ 393.0661(3)(a), (c), Fla. Stat. (2009). The Legislature subsequently imposed limits of $150,000 and $34,125, respectively. See §§ 393.0661(3)(a), (c), Fla. Stat. (2010).
Mr. Moreland requested and received an administrative fair hearing to challenge the tier assignment. At the hearing, he asserted that his service needs, as reflected in the following Agency-approved cost plans, justify assignment to Tier One:

Fiscal Year 2009-10:

Personal Care Assistance (moderate level, 60 hours per month): $11,700.00
Dental: ' $514.05
Support Coordination: $1,571.40
Companion: $10,447.00
Supported Employment: $32,884.80
Respite: $8,576.80
Medication Review: $66.78
Total Cost: $65,760.83

Fiscal Year 2010-11:

Personal Care Assistance (moderate level): $11,700.00
Dental: $514.05
Support Coordination: $1,571.40
Companion: $10,339.16
Supported Employment: $32,810.40
Respite: $8,697.60
Total Cost: $65,632.61
*154 The Agency’s general factors for consideration in making tier assignments are as follows:
(a) The client’s needs in functional, medical, and behavioral areas, as reflected in the client’s assessment using the assessment instrument known as the Questionnaire for Situational Information (QSI), the client’s support plan, pri- or service authorizations and approved cost plan.
(b) The client’s cost plan is developed through Agency evaluation of client characteristics, the Agency approved assessment process, support planning information, and the Agency’s prior service authorization process.
(c) The services authorized in an approved cost plan shall be key indicators of a tier assignment because they directly reflect the level of medical, adaptive or behavioral needs of a client.
(d) The client needs considered in tier assignments include only those services approved through the prior service authorization process to be medically necessary;
(e) The client’s current living setting; and
(f) The availability of supports and services from other sources, including Medicaid state plan and other federal, state and local programs as well as natural and community supports.
Fla. Admin. Code R. 65G-4.0026Q).
The Tier One Waiver is “limited to clients who have service needs that cannot be met in tier two, three, or four for intensive medical or adaptive needs and that are essential for avoiding institutionalization, or who possess behavioral problems that are exceptional in intensity, duration, or frequency and present a substantial risk of harm to themselves or others.” § 393.0661(3)(a), Fla. Stat. (2009). Florida Administrative Code Rule 65G-4.0027 specifically governs Tier One assignments, and provides, in pertinent part:
(1) The Tier One Waiver is limited to clients that the Agency has determined meet at least one of the following criteria:
(a) The client’s needs for medical or adaptive services are intense and cannot be met in Tiers Two, Three, and Four and are essential for avoiding institutionalization, or
(b) The client possesses behavioral problems that are exceptional in intensity, duration, or frequency with resulting service needs that cannot be met in Tiers Two, Three, and Four, and the client presents a substantial risk of harm to themselves or others.
[[Image here]]
(4) Clients who meet the criteria in subsection (1), and their needs cannot be met in Tier Two, Tier Three or Tier Four, shall be assigned to the Tier One Waiver. The following services as defined in the DD Handbook, if approved through the Agency’s prior authorization process, will be used as the primary basis for making an assignment or determining whether a tier change to Tier One is required:
(a) Personal Care Assistance;
(b) Behavior Analysis;
(c) Behavior Assistant Services;
(d) Supported Living Coaching;
(e) In-home Supports;
(f) Skilled, Residential or Private Duty Nursing Services;
(g) Intensive Behavioral Residential Habilitation Services;
*155 (h) Behavior Focus Residential Habil-itation Services at the moderate or above level of support;
(i) Behavior Focus Residential Habili-tation Services at the minimal level of support;
(j) Standard Residential Habilitation at the extensive 1, or higher, level of support;
(k) Standard Residential Habilitation at the moderate level of support;
(l) Special Medical Home Care;
(m) Occupational Therapy;
(n) Physical Therapy;
(o) Respiratory Therapy;
(p) Specialized Mental Health Services; or
(q) Adult Day Training at the 1:1 ratio.
The hearing officer found Mr. Moreland has “intense medical and adaptive service needs and ... would be in danger of institutionalization if the waiver services are reduced.” Thus, he meets one criterion for assignment to Tier One. See Fla. Admin. Code R. 65G-4.0027(1)(a). Finding no other criteria satisfied, the hearing officer then determined that, of the services listed in rule 65G-4.0027(4), only personal care assistance services (“PCA”) are included in Mr. Moreland’s cost plan. And because he is approved only for a moderate level of PCA at a cost of $11,700, his needs can be met within the Tier Three expenditure limit.[1], [2] Accordingly, the hearing officer recommended that the Agency find Mr. Moreland was properly assigned to Tier Three.
Mr. Moreland urged the Agency to reject the hearing officer’s recommendation, arguing that it is error, when making tier assignments, to only consider those services listed in rule 65G-4.0027(4). The Agency accepted the hearing officer’s recommendation, reasoning:
Petitioner cites Newsome v. APD []. In Newsome, the court expressly declined to determine whether all of the approved services on a client’s cost plan must be considered in determining tier assignment. While the court did find that the Agency should have considered a service not contained on the list set out in Rule 65G-4.0027(4), it found that service to be “directly related to Appellant’s intensive medical needs.”
The services and service arrays listed in Rule 65G-4.0027(2), (3) and (4) are the services and service arrays the Agency has determined presumptively address intensive medical or adaptive needs and exceptional behavioral problems. If Petitioner believes his intensive medical or adaptive needs require the continuation of other services not on that list, he needs to make that assertion and the Agency will evaluate his claim. A general assertion that he requires each and every one of his services because they have been determined medically necessary is insufficient to generate that assessment. In this case, however, every service Petitioner is approved to receive, with the exception of Supported Employment, can be accommodated under the spending cap of tier three. Petitioner has not cited us to anything in the record showing that Supported Employ *156 ment is directly related to Petitioner’s intensive medical needs.

Analysis

In Newsome, we reversed a Tier Three Waiver assignment, finding the Agency incorrectly interpreted rule 65G-4.0027(4) as limiting consideration to only those approved medically necessary services in a client’s cost plan that appear in the rule. 76 So.3d at 975. There, as in this case, the client had intense medical needs that would otherwise qualify her for Tier One. Id. at 974. Although her cost plan included PCA and several other services, the Agency considered only the PCA in assigning her to Tier Three because it was the only service listed in rule 65G-4.0027(4).[3] See id. at 974. Disagreeing with the Agency’s interpretation of the rule, we reasoned:
[Rule 65G-4.0027(4) ] states that the listed services are to be used as the “primary basis” for tier assignment; it does not state that the listed services are the only services to be considered .... [T]he Agency’s narrow interpretation of this rule is inconsistent with the proposition stated in rule 65G-4.0026(l)(c) that “[t]he services authorized in an approved cost plan shall be key indicators of a tier assignment because they directly reflect the level of medical, adaptive, or behavioral needs of a client.”
Id. at 975. We concluded at least one other service in the appellant’s cost plan— consumable medical supplies — was directly related to her intensive medical needs, and that had the Agency correctly considered it, the appellant’s needs would have exceeded the Tier Three expenditure limit. Id. Accordingly, we directed the Agency to assign the appellant to Tier One. Id.
Royer similarly involved an assignment to Tier Three of an Agency client who otherwise qualified for Tier One, based only on the cost of the client’s authorized PCA. 88 So.3d at 300. Citing Newsome, we reversed and directed the Agency to assign the client to Tier One “[b]ecause the Agency found that Appellant had intensive adaptive needs and the authorized services in Appellant’s cost plan exceeded the expenditure cap for Tier Three[.]” Id. at 300.
We disagree with Mr. Moreland that the Agency disregarded Newsome and Royer and misapplied rule 65G-4.0027(4) in his case. Rather, we conclude the Agency misapprehended its responsibility under rule 65G-4.0026(l)(c), which, as we pointed out in Newsome, provides that “[t]he services authorized in an approved cost plan shall be key indicators of a tier assignment because they directly reflect the level of medical, adaptive or behavioral needs of a client.”
The hearing officer’s recommended order included the finding — which the Agency adopted — that Mr. Moreland has “intense medical and adaptive service needs” and is “in danger of institutionalization if the waiver services are reduced.” See Fla. Admin. Code R. 65G^L0027(l)(a). Thus, Mr. Moreland qualifies for the Tier One Waiver, unless his intense medical and adaptive needs can be met in a lower tier and still allow him to avoid institutionalization. Under similar facts, we held in Newsome that the Agency cannot limit its consideration to the services listed in rule 65G^f.0027(4), but must also take into account other authorized services in the client’s cost plan, as indicated by rule 65G-4.0026. Because, under that rule, the cost *157 plan services are “key indicators of a tier assignment,” directly reflecting the client’s medical, adaptive, or behavioral needs, it is not sufficient for the Agency simply to aver in its final order that all of Mr. More-land’s cost plan services except supported employment can be met within Tier Three. Moreover, Mr. Moreland, as the client whose services are to be reduced, is not appropriately charged with proving “his intensive medical or adaptive needs require the continuation of’ supported employment services, as the Agency stated in its final order. Instead, the Agency has the burden to demonstrate that the reduced level of services available in the Tier Three Waiver will meet Mr. Moreland’s needs so that he can remain in his home setting.[4] See Fla. Admin. Code R. 65-2.060(1) (providing the agency has burden of proof in fair hearings where the challenged decision reduces or terminates benefits).
Finding the Agency failed to carry its burden, we reverse the final order approving Mr. Moreland’s Tier Three Waiver assignment. However, because the hearing officer and the Agency did not have the benefit of our decision when considering Mr. Moreland’s tier assignment, we conclude it is not appropriate to order reassignment to the Tier One Waiver, as we did in Newsome and Royer. Rather, we remand the matter for further proceedings consistent with this opinion.
REVERSED and REMANDED.
WOLF and THOMAS, JJ., concur.

. There is no dispute that Mr. Moreland does not qualify for Tier Two because he does not live in a residential facility, is not in supported living, and is not authorized to receive more than six hours of in-home support services daily. See Fla. Admin. Code R. 65G-4.0028.

. Tier Four placement is only for clients who are not eligible for the other three tiers. See Fla. Admin. Code R. 65G-4.00291.

. The Agency included waiver support services because it is a required component in all cost plans.

. Supported employment services are among the "habilitation services” states can provide under Medicaid waiver programs like Florida's DD Waiver. See 42 U.S.C. § 1396n(c)(5)(B). Habilitation services are intended to "assist individuals in acquiring, retaining, and improving the self-help, socialization, and adaptive skills necessary to reside successfully in home and community based settings!)]” 42 U.S.C. § 1396n(c)(5)(A).